IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| MARKIMIAN ADAMS HARRIS, SR., | ) | Case No. 25-01987-TOM-11 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION AND ORDER

This case came before the Court for a hearing on September 8, 2025, on the Motion for Relief from the Automatic Stay of Section 362 or in the Alternative Adequate Protection by Wells Fargo Bank, N.A. (Doc. 46, the "Motion" or the "Motion for Relief from Stay"). Appearing before the Court were Markimian Adams Harris, Sr. (the "Debtor" or "Mr. Harris"), David Hearne, attorney for Wells Fargo Bank, N.A.; and Jon Dudeck, Assistant U.S. Bankruptcy Administrator. This Court has jurisdiction pursuant to 28 U.S.C. §§1334(b), 151, and 157(a) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. §157(b)(2)(G).[2] This Court has considered the pleadings, the arguments of counsel, the testimony, the evidence admitted, and the law, and finds and concludes as follows.[3]

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
    The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. §157(b)(2)(G) provides as follows:
    (b)(2) Core proceedings include, but are not limited to–
    . . .
      (G) motions to terminate, annul, or modify the automatic stay[.]

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

# FINDINGS OF FACT[4]

The issue now before the Court in this bankruptcy case is whether Wells Fargo Bank, N.A. ("Wells Fargo") should be granted relief from the automatic stay as to the Debtor's residence. The Debtor opposes stay relief, not because he disputes that he has missed payments, but because he does not believe that Wells Fargo is the correct entity to collect the debt. The Debtor filed his Chapter 11 case on July 7, 2025, and from the outset he indicated on his schedules that he disputed Wells Fargo's claim. *See* Doc. 12. According to the Debtor's Schedule A/B, he owns real estate located at 3305 4th Street NE in Birmingham valued at $182,500. On Schedule D, Wells Fargo is listed as a secured creditor with a claim of $118,000;[5] however, the Debtor notes "Residential property at 3305 4th St NE AL 35215. Claim is disputed. Original note sold to Freddie Mac. Wells Fargo lacks standing." Doc. 12, at 16. In addition, the Debtor marked the claim as contingent, unliquidated, and disputed.[6]

At the hearing the Debtor introduced into evidence a letter from Wells Fargo confirming that the note is owned by Freddie Mac and that Wells Fargo is the servicer. Debtor's Ex. 1. The Debtor acknowledged at the hearing that he signed the note and mortgage in question, and did not dispute that the note was payable to Wells Fargo or that Wells Fargo was the creditor on the

---

[4] Without objection, this Court has taken judicial notice of all documents in its files and facts presented in prior hearings. Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See *ITT Rayonier, Inc. v. US.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5] Wells Fargo filed a secured claim in the amount of $133,062.82. Claim 9-1.

[6] The Debtor and Wells Fargo are involved in litigation in the District Court for the Northern District of Alabama, case number 2:25-cv-00994-MHH. The litigation was already pending at the time the Debtor filed his bankruptcy case. On his Statement of Financial Affairs, the Debtor described the nature of the case as "Petition in Equity for Constitutional Presentment; Injunctive Relief regarding unlawful foreclosure proceedings and fiduciary breach by national banking institution." Doc. 13, at 5. It appears that the Debtor's main issue in that litigation, like his contentions in this Court, also centers around whether Wells Fargo has "standing" to collect the mortgage debt. It appears from the docket sheet maintained by the District Court for the Northen District of Alabama that the litigation is stayed while this bankruptcy case is pending.

mortgage. The Debtor argued,[7] however, that Wells Fargo is not entitled to enforce the note since it is not the owner, and there is no evidence, such as allonges or endorsements, that Freddie Mac authorized Wells Fargo to enforce the note. The Debtor asserted that in order for Wells Fargo to enforce the debt there has to be possession, or a valid transfer, of the note. Further, the Debtor argued that under the TILA and RESPA statutes he should have been notified in writing[8] of a sale or transfer of the mortgage. According to the Debtor's testimony, in October of 2024 he asked Wells Fargo for evidence that it was entitled to enforce the note but he never received anything; it was at that point he stopped making mortgage payments.[9]

On his schedules the Debtor valued the property at $182,500 and listed the mortgage debt at $118,000; at the hearing the Debtor testified that he had about $65,000 in equity in the property. Counsel for Wells Fargo agreed that according to the Debtor's valuation of his home it appears that the Debtor has equity but noted that he did not know where the Debtor got his valuation.

---

[7] The Court is using the term "argued" to reference statements and allegations made by the Debtor in open Court. At first the Debtor read from a piece of paper then began to read from his phone. Shortly thereafter, the Court questioned him about the source of what he was reading on his phone. The Debtor testified that he researched the information that he was providing to the Court and then put the information into ChatGPT, which the Court understands to be a form of artificial intelligence, to organize the information for him. Once the Court noted potential flaws or failings of artificial intelligence, the Debtor stopped reading from his phone.

[8] The mortgage contains a provision addressing the sale of the note and a change in servicer, which provides in relevant part:

> 20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Claim 9-1, at 26.

[9] The Debtor has raised the same issues in his objection to Wells Fargo's proof of claim. The Court will address those issues, if appropriate, when it considers the objection.

According to counsel, the Debtor had not made mortgage payments since October 2024; the arrearage was $12,703.08, and the payoff approximately $133,000. The note, attached to the Proof of Claim (Claim 9-1), reflects that on June 23, 2020 the Debtor originally borrowed $132,308. According to the Proof of Claim itself, the total debt owed by the Debtor is $133,062.82, with arrearage as of the petition date in the amount of $18,299.80.[10]

The loan payment history attached to the Proof of Claim reflects amounts paid by the Debtor, where the payments were applied (such as to principal, interest, escrow, and fees), and fees charged, along with other information. *See* Claim 9-1, at 4 – 6. A brief review of the payment history indicates that the Debtor has been given credit for the payments that he has made on the mortgage debt.

In addition to the Wells Fargo mortgage debt, the Debtor listed on Schedule D a debt to AVEN/Coastal Community Bank in the amount of $29,745.52 that is also secured by his home. AVEN/Coastal Community Bank has not filed a proof of claim,[11] and neither the Debtor nor counsel for Wells Fargo mentioned this debt at the hearing.

The Debtor, who is appearing *pro se*, indicated in Schedule A/B that he has an "[e]quitable and beneficial interest in Harris Legacy Initiative Trust, a private irrevocable trust holding legal title to Debtor's principal residence at 3305 4th Street NE, Centerpoint, AL 35215. Debtor retains all beneficial use and control as Settlor and Trustee." Doc. 12, at 9. At another point in Schedule A/B the Debtor asserts he has a "[c]laim against the Federal Reserve filed in the U.S. District Court for the District of Columbia under a class-action styled matter seeking $400 billion in relief per

---

[10] The Motion itself reflects arrears of $10,486.32 as of July 18, 2025, for payments due from October 2024 through July 2025. Counsel for Wells Fargo stated at the hearing that the total arrearage is $12,703.08, which may include the payments due for August and September 2025. The arrearage in the Proof of Claim includes amounts related to escrow and prepetition fees. (Claim 9-1).

[11] The bar date for filing most proofs of claim is December 8, 2025, while government claimants have until January 5, 2026 to file proofs of claim.

4

individual plaintiff, arising from constitutional, monetary, and fiduciary violations involving the creation, issuance, and circulation of credit instruments" in the amount of $400,000,000,000.00. Doc. 12, at 10. These property interests claimed by the Debtor are atypical of interests claimed by other debtors in bankruptcy whether represented by an attorney or appearing *pro se*.[12]

## CONCLUSIONS OF LAW

The filing of a petition for relief under any chapter of the Bankruptcy Code operates as a stay of certain actions. 11 U.S.C. § 362(a). Typically, the actions stayed are actions by creditors to recover from the debtor, property of the debtor, or property of the estate for a debt that arose prior to the petition date. A party in interest may obtain relief from this automatic stay under the provisions of 11 U.S.C. § 362(d). Subsection (1) of § 362(d) provides that the court shall grant relief from the stay upon a showing of "cause" including (but not limited to) the lack of adequate protection of an interest in property. Subsection (2) of § 362(d) provides that the court shall grant relief from the stay of an act against property of the debtor or of the estate if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. Subsection (3) of § 362(d) applies only in single asset commercial real estate cases and, therefore, is not applicable to this case.

### A. Relief from Stay under 11 U.S.C. §362(d)(2)

---

[12] Based on the Debtor's schedules and other filings it appears that he may seek to address issues that this Court may determine are better addressed in his litigation against Wells Fargo pending in the District Court. What this Court hopes to address in this Memorandum Opinion and Order is the motion for relief from stay and the need for the Debtor to resume his mortgage payments. Some of the issues he seems to have referenced in filed documents, even when construed liberally as a Court should do within certain limits, *see In re Sanders*, 664 B.R. 371, 374 (Bankr. M.D. Ala. 2024), appear unrelated to his Chapter 11. The Court hopes to convey its view that a debtor who files a petition under the Bankruptcy Code, thereby obtaining the benefit of the automatic stay, must abide by bankruptcy laws. In a Chapter 11 case, a debtor must make an attempt at financial reorganization. Thus, in ruling on this motion for relief, the Court has only considered arguments that are related to this Chapter 11 and the Debtor's attempt to reorganize his debts. Any arguments made by the Debtor that are unrelated to his reorganization in this bankruptcy case would likely be more appropriately raised either at a later time if related to other disputes in this case or in another court.

A movant seeking relief under Bankruptcy Code § 362(d)(2) has the burden to prove that the debtor does not have equity in the property; if the movant is successful, "the burden shifts to the debtor to prove that the property is necessary for an effective reorganization." *Joyner Auto World v. George (In re George)*, 315 B.R. 624, 627 (Bankr. S.D. Ga. 2004) (citing *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–376, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988)). Relief may be granted under § 362(d)(2) only if both prongs are established. *Id.* "Equity is defined as the difference between the value of the subject property and the encumbrances against it." *Gerrald Auto Sales v. Willis (In re Willis)*, 411 B.R. 455, 458 (Bankr. S.D. Ga. 2007) (citing *Sutton v. Bank One, Texas, N.A. (In re Sutton)*, 904 F.2d 327, 329 (5th Cir.1990)). As to the second prong, the Eleventh Circuit Court of Appeals has stated "'[f]or property to be "necessary to an effective reorganization" of the debtor, it must be demonstrated that an effective reorganization is *realistically possible*; the mere fact that the property is indispensable [sic] to the debtor's survival is insufficient.'" *In re Williams*, 476 B.R. 329, 432 (Bankr. N.D. Ala. 2012) (quoting *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 673 (11th Cir.1984)).

It appears that the Debtor has equity in his home despite the fact that the note and mortgage were not signed until 2020. The Debtor testified that he believes he has approximately $65,000 in equity in his home, and counsel for Wells Fargo agreed that there is equity based on the Debtor's valuation. Wells Fargo, as the party moving for relief from the automatic stay, has the burden to prove a lack of equity. Counsel for Wells Fargo did not put on any evidence regarding equity and thus this prong of § 362(d)(2) has not been established. Since Wells Fargo has not satisfied § 362(d)(2)(A) regarding lack of equity, the Court need not address § 362(d)(2)(B) regarding

6

whether the property is necessary to an effective reorganization. Therefore, relief from stay is due to be denied under Bankruptcy Code §362(d)(2).

### B. Relief from Stay under 11 U.S.C. § 362(d)(1)

According to 11 U.S.C. § 362(d)(l), the court shall grant relief from the stay upon a showing of "cause" including a lack of adequate protection. 11 U.S.C. § 362(d)(1). Courts evaluating cause "look to the 'totality of the circumstances.'" *State Farm Fla. Ins. Co. v. Carapella (In re Gaime)*, 17 F.4th 1349, 1355 (11th Cir. 2021). In *In re BFW Liquidation, LLC*, the court explained:

> In determining "cause," a court should, "consider the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and other parties in interest" when exercising its discretion in granting a motion for relief for cause. Thus, cause is an inherently broad and flexible concept, allowing the bankruptcy court to resolve matters based on the unique facts of each situation.

*In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *1 (Bankr. N.D. Ala. Sept. 14, 2009) (Cohen, J.) (citation omitted). The parties' conduct, motives, and good or bad faith are just a few factors that may be examined when looking at the totality of the circumstances. *In re Mack*, 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006).

The lack of adequate protection is the only example of cause found in § 362(d)(1). As one court has noted, "the concept of adequate protection seeks to maintain the status quo between the secured creditor and the debtor while the debtor attempts to reorganize." *In re West Nottingham Academy in Cecil County*, 662 B.R. 103, 114 (Bankr. D. Md. 2024) (citation omitted). As one court has explained:

> "Adequate protection is designed to protect a secured creditor's interest in property from any decrease in value attributable to the automatic stay." Its purpose "is not to protect the secured creditor from loss per se, but to maintain the status quo and prevent any additional loss due to delay after a debtor files its [bankruptcy] petition."

7

*In re Campanella*, Case No. 24-20445-SMG, 2025 WL 670646, at *1 (Bankr. S.D. Fla. Feb. 28, 2025) (quoting *In re Rich Int'l Airways, Inc.*, 50 B.R. 17, 18 (Bankr. S.D. Fla. 1985), *Matter of Karl A. Neise, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981)).

Bankruptcy Code § 361 provides more information on what could be considered adequate protection.[13] According to § 361, a secured creditor could receive periodic cash payments for depreciation of the value of its interest in the collateral during the plan or other relief which is the "indubitable equivalent" of that creditor's interest in the collateral during the plan. A leading bankruptcy treatise has explained "[t]he last alternative for adequate protection is a catch-all, permitting such other relief 'as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.'" 3 Collier on Bankruptcy ¶ 361.03 (16th ed. 2025).

The Debtor's failure to make the regular mortgage payments each month may be "cause." *E.F. Hutton Mortg. Corp. v. Williams (In re Williams)*, 68 B.R. 442 (Bankr. M.D. Ga. 1987) (failure to make post-confirmation payments can constitute cause for lifting the stay). In *In re Schuessler*, a creditor moved for relief from the stay and, after a hearing, found that the debtors were only one payment behind at all relevant times, had made their payments for years, and paid late charges if a payment was late. *In re Schuessler*, 386 B.R. 458, 462-63 (Bankr. S.D.N.Y. 2008).

---

[13] 11 U.S.C. § 361 provides in relevant part:
> When adequate protection is required under section 362 . . . of this title of an interest of an entity in properly, such adequate protection may be provided by—
>> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title . . . results in a decrease in the value of such entity's interest in such property;
>> . . .
>> (3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361(1), (3).

In addition, the debtors had over $120,000 equity in their home. *Id.* at 462. Addressing whether cause existed to lift the stay, the court noted:

> To be sure, the failure to make mortgage payments constitutes "cause" for relief from the automatic stay and is one of the best examples of a "lack of adequate protection" under Section 362(d)(1) of the Bankruptcy Code. *See In re Taylor*, 151 B.R. 646, 648 (E.D.N.Y.1993) ("debtor's failure to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the automatic stay"). This is particularly true where a debtor lacks the willingness; the current means; or a realistic, near-present ability to make contractual payments to the secured creditor. In the short run, where there is a substantial equity cushion, the single fact that a debtor has missed one or more payments is not cause *per se* for relief from the automatic stay. Where, as in this case, the contractual default resulted from a record-keeping glitch or miscommunication rooted in the past and does not reflect a current or ongoing failure or inability to make payments, cause does not exist for granting relief from stay.

*Schuessler*, 386 B.R. at 480. In this case, it appears that the Debtor has not made a mortgage payment since October 2024. According to the Debtor, he stopped making payments because Wells Fargo does not own the note. The Court is concerned about the Debtor's unwillingness to make his mortgage payments; in fact the Debtor at first stated that it was his intent to not make payments until the litigation with Wells Fargo was resolved. To complicate matters, the Debtor has been unemployed which indicates an inability to make payments; however, since the Debtor has indicated he now has a job, hopefully he now has the financial ability and the willingness to make the mortgage payments so that he may keep his home. The *Schuessler* court noted that missed payments alone may not be cause to lift the stay where there is an equity cushion, but unlike the debtor in *Schuessler*, the Debtor has missed almost a years' worth of payments, and with each additional missed payments the equity cushion continues to shrink. Thus, the Debtor's lack of payments appears to be cause to lift the automatic stay.

This Court does not take lightly the granting of a motion for relief from stay when a debtor's home is involved. This Court is sympathetic to this Debtor's plight, as it is to the thousands

of debtors who have pending cases before this Court. In fact, motions for relief from the stay regarding home mortgages are routinely filed in these cases and this Court hears generally 15-30 such motions every week. In considering whether to grant a motion for relief from stay the Court weighs a mortgagee's right to payments and adequate protection against a debtor's right under the Bankruptcy Code to get a fresh start, which includes the opportunity to resume mortgage payments and cure mortgage arrears over a reasonable period of time so that a debtor may stay in his home. In this case, conditionally denying relief from the stay could benefit both the Debtor and Wells Fargo. If the Debtor resumes making his mortgage payments and cures the arrearage then Wells Fargo will get the benefit of its bargain, its interests will be protected and the status quo between the parties will stay the same; at the same time, the Debtor will have the chance for a fresh start as intended by the Bankruptcy Code.

While the Debtor has questioned whether Wells Fargo has "standing" to collect the mortgage payments and raised other issues regarding Wells Fargo and the mortgage debt, it appears clear to this Court that the Debtor has received credits for all mortgage payments made; thus, at this point, the Court is focused solely on whether relief from the automatic stay should be granted. It is undisputed that the Debtor signed the note and mortgage and that he lives in the house. According to the evidence before this Court, i.e., the payment history attached to the Proof of Claim, it appears that mortgage debt is being credited with the payments that the Debtor has made in the past; presumably, future payments will likewise be credited. The Court understands that the issues raised by the Debtor as to Wells Fargo's standing and other questions are important to him,[14] but in order for him to keep his home, and remain in this bankruptcy case, it is necessary for the Debtor to resume making his payments as required under the note, the mortgage, and the

---

[14] These issues may be addressed as part of the Debtor's objection to Wells Fargo's Proof of Claim. *See* FN 19 and accompanying text.

10

Bankruptcy Code. If the Debtor does not abide by the Bankruptcy Code and resume making his mortgage payments, then he is not entitled to continue receiving the benefit of the automatic stay. The Court may consider the Debtor's other issues with Wells Fargo in due course, at an appropriate time, but those other issues cannot be a distraction from his obligation to attempt financial reorganization and make his mortgage payments. As explained by the *BFW* court, the policies of the Bankruptcy Code require a debtor to make an effort to pay for his house in order to keep the automatic stay in place. This Court noted at the hearing that if the Debtor is unable or unwilling to make mortgage payments, then the automatic stay is due to be lifted. In this case, also as noted, if the Debtor's real goal is to challenge the Wells Fargo note and mortgage, he already has a lawsuit pending in the District Court. His dispute will be more appropriately determined in that lawsuit if he is not going to use the bankruptcy laws for their purpose – to get a financial fresh start, to reorganize, and have an opportunity to pay his obligations.

In consideration of the foregoing, this Court finds that relief from stay is due to be conditionally denied so long as debtor resumes and continues each month to pay his regular mortgage payments beginning with the November 1, 2025[15] payment. The payments are to be made to Wells Fargo as the Debtor has done in the past. Furthermore, the Debtor shall pay to Wells Fargo each month beginning on November 1, 2025 the additional amount of $200[16] to be applied to the arrearage. Wells Fargo shall provide the Debtor regular statements reflecting credit of payments received and applied. Counsel for Wells Fargo Bank shall file a report to the Court on

---

[15] At the hearing, the Court instructed the Debtor that his payments were to resume on October 1, 2025; however, since this Memorandum Opinion and Order is being entered mid-September, the Debtor has until November 1, 2025 to resume his payments in order to give him every opportunity to get on better financial footing, timely resume his payments, and succeed in this bankruptcy case.

[16] Typically, a consumer debtor in a Chapter 13 bankruptcy case cures mortgage arrearage by spreading out the payments over the five-year length of his Chapter 13 plan. The Court has determined it would be appropriate that the Debtor similarly pay his mortgage arrears over approximately five years, which works out to approximately $200 per month.

the 20th of each month beginning November 20, 2025 reflecting all payments received from the Debtor and how the payments have been applied. The report shall include the total balance due and the total amount of arrears due on the account.[17] In the event Debtor fails to remit any regular monthly payment to Wells Fargo or fails to pay the additional amount of $200 to be applied to the arrearage, Wells Fargo may file a pleading to renew its Motion, and a hearing will be scheduled by subsequent notice.[18] Furthermore, although the Court is not addressing in this Memorandum Opinion and Order any issue other than the request for relief from stay, the Court determines that it is reasonable to require Wells Fargo to, on or before December 10, 2025, produce and file in the Court's ECF system documentation evidencing its entitlement to enforce the note and mortgage for the Court's review.[19] In addition, the documentation must be served upon the Debtor and the Bankruptcy Administrator.

A status conference on the Motion shall be held on January 12, 2026, at 10:30 a.m. in Courtroom 3, Robert S. Vance Federal Building, 1800 5th Avenue North, Birmingham, Alabama.

---

[17] These reports will demonstrate to the Court and the Bankruptcy Administrator that the Debtor's payments on his home mortgage are being posted and credited. This additional accounting will hopefully help convince the Debtor he is getting credit for his payments and his mortgage balance is decreasing.

[18] At the hearing this Court indicated that its ruling may contain a provision that, in the event the Debtor defaulted, Wells Fargo would provide a notice to the Debtor to cure the default in 15 days or relief from stay would be automatically granted. The Court has determined that it is more appropriate to allow Wells Fargo to renew its Motion and schedule a hearing, as the Debtor is acting *pro se*, and this approach is what the Court typically takes in a Chapter 13 case.

[19] As mentioned, the Court determines that it is not unreasonable to require Wells Fargo to demonstrate that it is entitled to enforce the note and mortgage according to Alabama law. The right to enforce may arise in more than one way, as described in Alabama Code section 7-3-301, and it is not possible for the Court to tell Wells Fargo exactly what it must produce in order to establish its entitlement. The case of *Nelson v. Nationstar Mortgage, LLC (In re Nelson)*, 607 B.R. 685 (Bankr. N.D. Ala. 2019) and the case of *Federal Home Loan Mortgage Corp. v. Wilson*, 702 Fed. App'x 827 (11th Cir. 2017) are two cases involving the right to enforce, and there are undoubtedly others decided under Alabama law.

  The Court reiterates that it is not taking up the question of whether Wells Fargo has "standing" to file a proof of claim or enforce the note and mortgage at this time. All issues raised by the Debtor in his various motions and objections may be determined by this Court at a later time, as appropriate.

## CONCLUSION

Based on the foregoing findings and conclusions, this Court finds that Wells Fargo's Motion is due to be conditionally denied. Accordingly, it is hereby

**ORDERED, ADJUDGED and DECREED** that Wells Fargo's Motion for Relief from Stay is **CONDITIONALLY DENIED**. It is further

**ORDERED, ADJUDGED, and DECREED** that in the event of future default, Wells Fargo may file a pleading to renew its Motion, and a hearing will be scheduled by subsequent notice. It is further

**ORDERED, ADJUDGED, and DECREED** that Wells Fargo shall produce and file in the Court's ECF system on or before December 10, 2025 documentation evidencing its entitlement to enforce the note and mortgage, and serve the same upon the Debtor and the Bankruptcy Administrator.

Dated: September 18, 2025 /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm